Melody A. Kramer, State Bar No. 169984
Kramer Law Office, Inc.
4010 Sorrento Valley Blvd. Ste 400
San Diego, CA 92121
Phone:855-835-5520
Email: kramerlawinc@gmail.com

Alan J. Reinach, Esq. State Bar No. 196899, *admission pending*
CHURCH STATE COUNCIL
2686 Townsgate Road,
Westlake Village, CA 91359
Phone: 805-413-7398
Fax: 805-497-3828
E-mail: ajreinach@churchstate.org

Attorneys for Plaintiff Jamie Swanson

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE SWANSON,<br>                    Plaintiff,<br>          v.<br><br>CARLOS DEL TORO, Secretary of the Navy, in his official capacity,<br><br>                    Defendant. | Case No.  **'22CV232  BEN DEB**<br><br>COMPLAINT<br><br>(Jury Trial Demand)<br><br>1. Violation of Civil Rights – Title VII (Religious and Sex Discrimination, Harassment, and Retaliation)<br><br>2. Deprivation of Civil Rights – First Amendment -  Free Exercise<br><br>3. Deprivation of Civil Rights - First Amendment – Freedom of Speech<br><br>4. Deprivation of Civil Rights – First Amendment – Establishment Clause<br><br>5. Violation of Fifth Amendment – Equal Protection |

-1-

**Jamie Swanson v. Secretary of Navy**                    **Plaintiff's Complaint**

6. Violation of Religious Freedom Restoration Act

**NATURE OF THE ACTION**

1. Plaintiff Jamie Swanson is a Christian who has been a civilian employee of the United States Marines at Camp Pendleton since 2005, after leaving active duty in the Marines.

2. From 2017 until her transfer in November 2019, Swanson was under a directive to refrain from all religious speech in the workplace, which was followed by a second directive to remove from sight all personal items associated with her religion.

3. These directives were issued on account of complaints by a Buddhist subordinate, Savin Phon, despite the lack of any allegation that Swanson had ever directed any religious speech at or toward him. She had never proselytized or engaged Phon in any religious discussion whatsoever.

4. Defendant's directive to excise religious speech from the workplace was in violation of Swanson's First Amendment rights to the free exercise of her religious faith and her free speech rights, in violation of the Fifth Amendment guarantee of equal protection, as well as violating Swanson's rights under the Religious Freedom Restoration Act that her faith should not be substantially burdened in the absence of a compelling state interest. Here, the "no religious speech" directive violated the Defendant's own policies regarding religious speech in a Federal workplace.

5. Because Defendant gave preference to Phon's religious sensibilities over those of Swanson, Defendant also violated Swanson's right to equal protection of the law, and further violated the First Amendment's Establishment Clause requirement that the government remain neutral among religious faiths.

-2-

**Jamie Swanson v. Secretary of Navy**                    **Plaintiff's Complaint**

6. Swanson also claims harassment on account of both religion and gender, in that her treatment by both Phon and her supervisor, Dionisio Flores created a hostile work environment.

7. In addition to her claims for violation of her rights under the First and Fifth Amendments to the United States Constitution and the Religious Freedom Restoration Act, Swanson asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* for harassment, discrimination and retaliation.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1361.

9. Venue lies in this district pursuant to 28 U.S.C. § 1391(e)(1).

## IDENTIFICATION OF PARTIES

10. Plaintiff Jamie Swanson is at all relevant times an individual residing in San Diego County, California and is a person protected by the First and Fifth Amendments to the United States Constitution, guaranteeing her the free exercise of her religion. She is also protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. and is a member of a protected class based on her religion – Christian/non-denominational.

11. Defendant Carlos Del Toro is named as defendant in his official capacity as Secretary of the Navy, as Plaintiff Swanson's claims arise from her employment as a civilian employee at Camp Pendleton, in San Diego County.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. Plaintiff timely filed an administrative EEO complaint on January 21, 2020 alleging ongoing harassment, discrimination and reprisal (retaliation) with the most recent discriminatory act dated October, 2019.  The matter was

-3-

**Jamie Swanson v. Secretary of Navy**                    **Plaintiff's Complaint**

submitted to an administrative judge with the United States Equal Employment Opportunity Commission – Office of Federal Operations. Following the administrative proceedings, Swanson received a final agency decision dated November 24 2021, giving her notice of her right to file her Title VII civil rights claims in Federal Court within ninety (90) days thereof. Swanson has therefore exhausted her administrative remedies, and files this action timely with respect to her Title VII claims.

## DEMAND FOR JURY TRIAL

13. Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

## FACTUAL ALLEGATIONS

14. Plaintiff Swanson has worked as a civilian employee in the Legal Section of the US Marine Corps at Camp Pendleton, California since 2005, after leaving active duty military service. Her title was Supervisory Human Resources Assistant (Military) Within Headquarters and Support Battalion, at Marine Corps Installations West-Marine Corps Base, Camp Pendleton.

15. Plaintiff Swanson's first level supervisor was Dionisio Flores at all times relevant herein, and at the time Swanson filed her EEO herein, Lt. Col. Michael Carter was the commanding officer (XO).

16. Swanson worked in a supervisory capacity as a GS7. Beginning in May 2016, Swanson was responsible to supervise a newly hired subordinate Savin Phon. Mr. Phon said he is a Buddhist. Flores told Swanson that Phon is from Cambodia.

17. On or about May 4, 2017, Swanson met with Phon to discuss his upcoming performance appraisal. She specifically discussed several instances where Phon's attitude and conduct toward Swanson were inappropriate. He was rude

-4-

**Jamie Swanson v. Secretary of Navy**                    **Plaintiff's Complaint**

and demeaning.

18. Four days later, on May 8, 2017, Swanson's supervisor Flores informed both Swanson and Clement Robinson, the only other Christian in the office, that Phon is offended whenever he overhears any faith-related conversations because he is a Buddhist. Flores gave both Swanson and Flores an unlawful directive to refrain from religious speech. In the Agency's investigation, Robinson corroborated Swanson's testimony that Flores directed them to refrain from religious speech.

19. This directive to refrain from religious speech remained in full force and effect throughout Swanson's employment in the Legal Office, being repeated periodically by Flores until Swanson was reassigned in November 2019, in response to her grievance.

20. Long before Phon was hired, a small group began lunch time Bible studies in the conference room. The Bible studies began in about 2006. There was a core group of three or four persons, and sometimes as many as seven would attend.

21. Because it was known that Swanson is a Christian, other employees would occasionally engage Swanson in religious speech while she was at her desk. Swanson did her level best to end the conversation or take it outside in order to comply with Flores' order to refrain from religious speech.

22. However, being required to avoid any and all religious speech created a hostile work environment, as Swanson was constantly on edge, worried about whether someone would seek to engage her in casual religious chatter.

23. Swanson's anxiety was heightened by the periodic complaints Phon made about religious speech, even though any such speech was never directed at him, or about him, or had anything to do with him.

24. At all times relevant herein, Ms. Swanson's religious speech was protected by the free speech and religious freedom provisions of the First Amendment, and by Federal policy and directives regarding religious expression in the Federal workplace.

**Jamie Swanson v. Secretary of Navy**                                        **Plaintiff's Complaint**

25. Phon would periodically complain to Flores if he overheard *any* mention of religion or God from across the room. Flores, in turn, would then repeat Phon's complaints to Swanson, exaggerating and telling her that Phon had filed complaints. This was routinely false until Phon finally did file a spurious complaint on October 17 2019 that, on information and belief, was denied.

26. An Agency human resources staff member told Swanson that Flores was trying to get rid of her. Swanson was told that a previous H.R. manager had led Flores to believe it would be easy to do so, and that Flores was frustrated because he found it was not so easy.

27. On information and belief, Flores took advantage of the opportunity provided by Phon's complaints about Swanson's religious speech to harass Swanson so that he would either secure her termination or get her to transfer out.

28. Beginning early in 2018, Phon began to report directly to Flores, bypassing Swanson entirely, even though she was his direct supervisor. When Swanson discussed this with Flores in March 2018, Flores told her that Phon's Cambodian culture does not place women in positions of leadership, and "for this reason" he may be uncomfortable coming to Swanson as his supervisor." Flores told me I was to be "sensitive" to Phon whenever he chose not to communicate directly with me but to go to Flores instead. In other words, Swanson was supposed to acquiesce to Phon's blatant sexism so that Phon could violate the chain of command and report to a man.

29. By permitting Phon to bypass Swanson as his supervisor because she is a woman, Flores engaged in flagrant sex discrimination. This discriminatory conduct continued until Swanson was transferred out of Legal in November 2019.

30. In the summer of 2018, Flores invited Swanson to have coffee at a local Coffee Bean in order to hold a private conversation. Flores told Swanson she has been a disappointment to every XO (commanding officer), an obvious falsehood, but one that deeply hurt Swanson. He told Swanson he had asked

-6-

**Jamie Swanson v. Secretary of Navy**                          **Plaintiff's Complaint**

others about their opinion of her. He also criticized Swanson's appearance and said her appearance has "come up in conversations." Flores then offered Swanson $50 to buy a couple of new sweaters, an offer that made Swanson very uncomfortable and that she found demeaning, insulting, and humiliating.

31. Flores' condescending and demeaning treatment of Swanson only made an already hostile work environment all the more unbearable, now on the basis of sex as well as religion. Swanson was made to feel that not only Flores but others were scrutinizing her appearance and finding fault with her.

32. Because Swanson dresses modestly, consistent with her Christian faith, she surmised that Flores was criticizing her wardrobe because it was too conservative – he wanted her to dress in a more revealing fashion. She became extremely self-conscious about her appearance, and it added considerably to her anxiety and depression.

33. About the same time, August of 2018, Flores began a concerted pattern of harassment regarding Swanson's work duties and performance. Flores issued increased assignments, ratcheting up the pressure on an already full workload. These additional job duties, outside of Swanson's job description, included:

   a. Assigned as VWAC (Victim and Witness Assistance Coordinator) for the unit, a difficult and time consuming assignment;

   b. Required to conduct weekly training for the Legal Section;

   c. Assigned to create Standard Operating Procedures for the Legal Section from scratch;

   d. Instructed to engage more with the legal team, such as coordinating potlucks, taking them out to lunch regularly, quarterly "brain-storming sessions" and one-on-one time;

   e. Directed to create a Vision Statement/Mission Statement/Values Statement;

   f. Tasked with creating an "Orientation" document for new employees

**Jamie Swanson v. Secretary of Navy**                    **Plaintiff's Complaint**

g. Tasked with creating an "Outcall" document for departing employees

h. Instructed to create "decision trees" for the CO to make decisions regarding legal cases

i. Instructed to create work-flow charts for all of our processes

35. In September 2018, Flores informed Swanson that Phon had complained about religious articles on her desk, and directed her to remove them, or put them in a drawer, so they would not be visible to others. This included items such as a personal Bible and a daily flip calendar with religious sayings on each page. The calendar could not be read unless someone was standing next to Swanson's desk. There was no reason why Phon would have to approach Swanson's desk close enough for him to read the calendar. His desk was on the opposite side of the office from Swanson, about twenty feet away.

36. Also in September 2018, Flores and Swanson met with XO Carter to discuss the problem of Phon going outside the chain of command and reporting to Flores. XO Carter told Flores in no uncertain terms that what he was doing undermines my authority as the 1st line supervisor. XO Carter gave Flores a directive that should Phon come to him with work concerns, he should redirect Phon to Swanson as his supervisor.

37. Despite being told by the XO that Flores should not permit Phon to go outside the chain of command, Flores disobeyed this order. Nothing changed.

38. Flores treated Swanson and Phon differently in this regard, interfering with Swanson's communication with the XO, but encouraging Phon to go directly to him outside the chain of command.

34. In so doing, Flores empowered and reinforced Phon's sexism, as well as rendering the workplace hostile on account of sex. Plainly, Flores permitted Phon to avoid dealing with Swanson as his supervisor due to Phon's objection to a female supervisor.

35. On September 24, 2018, Flores told Swanson to "ease it" with respect to supervision of Phon, so Phon doesn't get offended when Swanson would

-8-

**Jamie Swanson v. Secretary of Navy**                    **Plaintiff's Complaint**

discuss work requirements as his supervisor.

36. On September 27 2018, Swanson emailed Flores, and copied the XO Carter, requesting that when Swanson and Flores meet in his office, the door be propped open, or a witness be present. Swanson cited her extreme anxiety and fear due to a prior sexual assault.

37. Swanson felt she had to request the open door because Flores had been consistently harassing her when they met behind closed doors, and Swanson could no longer tolerate Flores' hostility.

38. Although Flores complied with Swanson's desire for an open door, he also acted as though she had requested always to have a female witness present and would not meet if only a male witness were present, despite Swanson having never made such a request. Flores also told Phon that Swanson did not trust men, when in fact, it was Phon who resisted being supervised by a woman. Flores also told the XO Carter that Swanson doesn't trust men.  This is yet another example of sex discrimination.

39. When Swanson met with XO Carter and Flores, Swanson's XO dismissed her concerns and at one point said he was not an LMFT (licensed marriage and family therapist), a remark Swanson found demeaning and insulting. She was complaining about actual harassment, not relationship problems.

40. No doubt emboldened by the XO's dismissal of Swanson's complaints, Flores issued Swanson an LOE (Letter of Expectations) on October 3, 2018. This LOE cited Swanson for her efforts to communicate her concerns to the XO, going "outside the chain of command" and, in so doing, seeking clarification concerning the restrictive leave policy Flores had imposed upon her alone. While issuing Swanson the LOE, Flores told her she was not permitted to go above his head to the XO with any concerns – that she is required to communicate only to him. This also directly contradicted Swanson's job description which required her to communicate directly with the XO on legal

-9-

matters.

41. In so doing, Flores subjected Swanson to disparate treatment, in that he permitted and even encouraged Phon to go outside the chain of command, and to report directly to himself instead of to Swanson, his actual supervisor. Flores did not require Phon to express his concerns directly to his actual supervisor, Swanson. Yet Flores ordered Swanson not to go outside the chain of command by communicating any concerns to the XO.

42. By permitting Phon to bypass the chain of command, Flores made Swanson's job as supervisor impossible. Flores undermined Swanson's authority throughout the office and humiliated Swanson. Flores also unreasonably interfered with Swanson's work environment and created a hostile and intimidating work environment for her, the very definition of harassment.

43. Phon kept very odd hours at work, disappearing at times without notice, and never informing Swanson of his whereabouts. Had Swanson's authority not been so severely undermined, she would have counseled Phon about attendance, and if the behavior continued, Phon would have warranted written warnings and/or discipline based on his irregular attendance.

44. Of course, Flores not only did not counsel or discipline Phon for his inconsistent attendance record, Flores even encouraged Phon to take leave and as many breaks as frequently as he wanted.

45. Flores and Phon collaborated together in creating a hostile work environment for Swanson based on both her religion and sex, in an effort to secure her removal from the Legal Office.

46. Clearly, Flores sought to isolate Swanson in his effort to secure her termination or removal. Moreover, Swanson's tactful request for an open door implied that she was not comfortable with what had been taking place behind closed doors. In fact, Flores had been subjecting Swanson to hostility and

-10-

**Jamie Swanson v. Secretary of Navy**                    **Plaintiff's Complaint**

harassment. Requiring Swanson, then, to only communicate her concerns about being harassed to her harasser was, itself, a form of harassment.

47. As part of the LOE, Flores also gave Swanson an unlawful directive that she was not to take leave for non-emergency medical appointments during the workday. This effectively prevented Swanson from obtaining medical or counseling care for her PTSD and related mental health concerns. Swanson's medical care was through the Veterans Administration and was primarily provided during the workday. Swanson was unable to obtain care after work hours, despite making a concerted effort to do so.

48. Flores' directive to Swanson regarding her use of leave clearly violated Agency policy.

49. Although the LOE specified monthly meetings, they turned out to be weekly meetings for about two months. In these meetings, Flores would constantly adjust goals, issue vague recommendations, all clearly designed to destabilize and traumatize Swanson in the performance of her duties.

50. In March 2019, Flores issued Swanson a personal improvement period (PIP) effectively preventing her from obtaining a step increase. The justifications Flores cited for issuing the PIP were vague and mostly incomprehensible, as were the PIPs requirements, couched in generalities rather than identifying specific performance issues that could be improved.

51. By contrast, Flores issued Phon a step increase, without any input from Phon's supervisor, i.e., without any input from Swanson.

52. On June 21, 2019, Swanson filed a formal written grievance. She requested removal of the PIP, completion of her 2017 – 2019 performance appraisal with an acceptable rating, and to be removed from Flores' authority and supervision. She requested that the command structure in Legal be reviewed.

53. In a follow up letter concerning this grievance, dated 15 July 2019, Swanson notified Defendant that she intended to request reasonable accommodation on account of extreme anxiety.

-11-

54. Swanson also complained of religious discrimination and sexism, i.e., sex discrimination, and was informed that she needed to file an EEO.  Swanson's EEO is also dated June 21, 2019.

55. On or about October 16, 2019, Swanson received a response to her grievance. As a result of her grievance, Defendant removed the PIP from her file and she received a performance appraisal, as requested. Swanson had complained for years that she had been working above her pay grade, and that the Legal Department needed to be restructured. This was done, but only after Swanson was removed from the Legal Department. Instead of promoting Swanson, and removing her from under Flores' authority, the Defendant removed the one complaining of discrimination, sexism and harassment and left the harassers in place.

56. In November 2019, Swanson was placed in a temporary detail for the staff secretary of the General at Camp Pendleton.

57. In June 2020, Swanson was transferred to a customer service lead position, lacking any supervisory duties and performing very low-level duties with no opportunity for advancement. In short, Swanson was transferred to a dead-end position as punishment and in retaliation for complaining of discrimination, etc.

58. Swanson endured the administrative investigative proceedings, which predictably ended with a Final Agency Decision issued on November 24, 2021, denying Swanson's claims.

59. This action is timely filed within ninety (90) days thereof.

### FIRST CLAIM FOR RELIEF
### Violation of Civil Rights
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e, *et. seq.*
### Religious and Sex Discrimination, Harassment and Retaliation

60. Plaintiff incorporates by reference all preceding paragraphs.

61. As documented in the fact section above, Defendant has subjected Plaintiff to

-12-

**Jamie Swanson v. Secretary of Navy**                    **Plaintiff's Complaint**

discrimination and harassment on account of both her religion and sex.

62. Plaintiff preserved her claims of religious and sex discrimination, harassment and retaliation, as alleged herein, by filing an EEO complaint and receiving a Final Agency Decision.

63. During these proceedings, Swanson requested a hearing before the EEOC. As part of the EEOC proceedings, Swanson requested to amend her complaint to include a charge of retaliation based on the Defendant's decision to detail Swanson to a dead-end job, rather than take action against her harassers.

64. By virtue of this motion to amend her complaint, Swanson has preserved a claim of retaliation.

65. As a direct and proximate result of Defendant's discriminatory action, Plaintiff has suffered harm in the form of past and future lost wages and benefits and other pecuniary loss, including, but not limited to, costs associated with finding other employment.

66. As a further direct and proximate result of Defendant's discriminatory actions against Plaintiff, as alleged above, Plaintiff has been harmed in that he has suffered humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body, in an amount according to proof.

67. Plaintiff also seeks declaratory and injunctive relief, including but not limited to reinstatement to the Legal Office in a position that does not report to Flores.

68. Plaintiff also seeks reasonable attorneys' fees, pursuant to 42 U.S.C. § 2000e-5(k).

### SECOND CLAIM FOR RELIEF
### Deprivation of Civil Rights-- First Amendment
### Free Exercise of Religion

69. Plaintiff incorporates by reference all preceding paragraphs.

70. As alleged above, Defendant unlawfully required Plaintiff to abstain from

-13-

**Jamie Swanson v. Secretary of Navy**                    **Plaintiff's Complaint**

religious speech in violation of her First Amendment rights to freely exercise her religion, and in violation of the United States Government's own policies and directives regarding religious speech in a Federal workplace.

71.  Defendant's directive to Swanson was not neutral or generally applicable: it applied specifically to Swanson and only one other individual.

72.  Defendant's directive was intended to coerce Swanson to change her religious practice of engaging in casual religious speech on a voluntary basis and did in fact succeed in coercing Swanson to abandon her religious speech/conduct.

73.  At all times relevant herein, non-proselytizing, non-harassing religious speech is permitted in the Federal workplace, protected by both the Free Exercise and Free Speech clauses of the First Amendment.

74.  As a proximate result of Defendant's actions, Plaintiff Swanson has suffered harm and seeks damages in an amount according to proof, together with declaratory and injunctive relief, declaring that the Defendant violated her First Amendment Rights, and enforcing existing U.S. policies regarding religious speech in a Federal workplace.

### THIRD CLAIM FOR RELIEF
### Deprivation of Civil Rights-- First Amendment
### Freedom of Speech

75.  Plaintiff incorporates by reference all preceding paragraphs.

76.  As alleged above, Defendant unlawfully required Plaintiff to abstain from religious speech in violation of her First Amendment rights to freedom of speech, and in violation of the United States Government's own policies and directives regarding religious speech in a Federal workplace.

77.  Defendant's discriminatory treatment of Swanson placed a chilling effect on Swanson's expression of her faith.

78.  Defendant's directive to Swanson to refrain from religious speech constitutes content discrimination and viewpoint discrimination.

79.  At all times relevant herein, non-proselytizing, non-harassing religious speech

-14-

**Jamie Swanson v. Secretary of Navy**                    **Plaintiff's Complaint**

is permitted in the Federal workplace, protected by both the Free Exercise and Free Speech clauses of the First Amendment.

80. As a proximate result of Defendant's actions, Plaintiff Swanson has suffered harm and seeks damages in an amount according to proof, together with declaratory and injunctive relief, declaring that the Defendant violated her First Amendment Rights, and enforcing existing U.S. policies regarding religious speech in a Federal workplace.

### FOURTH CLAIM FOR RELIEF
### Deprivation of Civil Rights-- First Amendment
### Violation of the Establishment Clause

81. Plaintiff incorporates by reference all preceding paragraphs.

82. As alleged above, Defendant unlawfully required Plaintiff to abstain from religious speech in violation of her First Amendment rights to freedom of speech, and in violation of the United States Government's own policies and directives regarding religious speech in a Federal workplace.

83. In so doing, Defendant gave preferential treatment to Phon's Buddhist religion, over Plaintiff Swanson's Christian faith.

84. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." Larson v. Valente, 456 U.S. 228, 244 (1982).

85. In giving preferential treatment to Phon's Buddhist religion, Defendant violated its Establishment Clause obligation of religious neutrality.

86. As a proximate result of Defendant's violation of its duty of religious neutrality under the Establishment Clause, Plaintiff Swanson has suffered harm and seeks damages in an amount according to proof, together with declaratory and injunctive relief, declaring that the Defendant violated her First Amendment Rights, and enforcing existing U.S. policies regarding religious speech in a Federal workplace.

-15-

**Jamie Swanson v. Secretary of Navy**                    **Plaintiff's Complaint**

## FIFTH CLAIM FOR RELIEF
### Violation of the Fifth Amendment to the United States Constitution Equal Protection

87. Plaintiff incorporates by reference all preceding paragraphs.

88. As alleged above, Defendant unlawfully required Plaintiff to abstain from religious speech in violation of her First Amendment rights to freedom of speech, in violation of the United States Government's own policies and directives regarding religious speech in a Federal workplace, and also in violation of Swanson's right to equal protection of the laws.

89. In so doing, Defendant gave preferential treatment to Phon's Buddhist religion, over Plaintiff Swanson's Christian faith.

90. Defendant also violated the Fifth Amendment guarantee of equal protection of the laws by its discriminatory treatment of Swanson.

91. As a proximate result of Defendant's violation of its duty of religious neutrality under the Establishment Clause, Plaintiff Swanson has suffered harm and seeks damages in an amount according to proof, together with declaratory and injunctive relief, declaring that the Defendant violated her First Amendment Rights, and enforcing existing U.S. policies regarding religious speech in a Federal workplace.

## SIXTH CLAIM FOR RELIEF
### Violation of the Religious Freedom Restoration Act

92. Plaintiff incorporates by reference all preceding paragraphs.

93. At all times relevant herein, Plaintiff Swanson has a sincerely held religious belief that requires her to speak of her faith with others of like faith to encourage and bless one another.

94. Defendant burdened Plaintiff Swanson's religious exercise by requiring her to abstain from religious speech, even though such speech was non-proselytizing, non-harassing speech.

95. Defendant coerced Plaintiff into altering or abandoning a religious practice

-16-

**Jamie Swanson v. Secretary of Navy**                    **Plaintiff's Complaint**

while at work, resulting in a substantial burden on Plaintiff's religious exercise.

96. Defendant's directive to Plaintiff did not advance any legitimate government interest, compelling or otherwise.

97. Nor was Defendant's directive the least restrictive means of preventing offensive religious speech in a federal workplace. Instead, Defendant's directive violated existing agency and Federal guidelines on religious speech in the Federal workplace.

98. Plaintiff Swanson has suffered harm and seeks damages in an amount to proof, together with declaratory and injunctive relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests this Court:

a. Declare that Defendant violated Plaintiff's rights under Title VII (42 USC § 2000e, et seq), the First and Fifth Amendments, and the Religious Freedom Restoration Act.

b. Grant Plaintiff injunctive relief, including but not limited to reinstatement to the Legal Department in a position not supervised by Flores.

c. Award Plaintiff nominal and compensatory damages, and damages for lost economic opportunity associated with being transferred to a dead-end job.

d. Award Plaintiff the costs of this action and reasonable attorney fees; and

e. Award such other and further relief as this court deems equitable and just.

Respectfully submitted this 22nd day of February, 2022.

Kramer Law Office, Inc.
Church State Council

*Melody A. Kramer*
_____
Melody A. Kramer
Attorneys for Plaintiff Jamie Swanson

-17-

**Jamie Swanson v. Secretary of Navy**                    **Plaintiff's Complaint**